IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEIF THURSTON CARLSON, Sr., | No. CV 11-02976 CRB |
| Petitioner, | **ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |
| v. | |
| ATTORNEY GENERAL, State of California, | |
| Respondent. | |

Leif Thurston Carlson, Sr., convicted of willful infliction of harm to a child, seeks a writ of habeas corpus under 28 U.S.C. § 2254 invalidating his conviction and sentence from Contra Costa County Superior Court due to alleged violations of his right to confront his accusers and his right to a speedy trial. For the reasons that follow, the Court DENIES his petition.

## I.   STATEMENT OF THE CASE

In July 2009, Carlson Sr. was convicted of willful infliction of harm or injury to a child, Cal. Penal Code § 273(a)(b). Ex. 1 at 115. The court sentenced Carlson to four years' formal probation, ten days in jail, which may be completed via work release program, twenty hours of community service, fifty-two hours of anger management classes, and a $400.00 fine. Ex. 1 at 123-24. The Appellate Division of the Contra Costa County Superior Court affirmed the judgment in September 2010, and denied Carlson's application for certification to the California Court of Appeal. Exs. 7 & 8. Carlson's petition for writ of mandate was

denied by the California Court of Appeal in November 2010, Exs. 9 & 10, and the California Supreme Court denied his habeas petition in February 2011. Ex. 12. Having properly exhausted his avenues for relief in state court, Carlson now petitions this Court for a writ of habeas corpus.

## II.     STATEMENT OF FACTS

On October 12, 2008, Carlson conducted a guitar lesson with his seven-year-old son, Leif Carlson Jr., at their home in Moraga. Trial Transcript (Ex. 2) at 107. When Leif Jr. did not play the guitar correctly, Carlson hit Leif Jr.'s left cheek with his fist. Id. at 108, 133, 247. Later that afternoon, Officer Ronald Ward, a police officer for the City of Moraga, responded to a report of a possible assault on a sibling made by Leif Jr.'s stepbrother, Joshua Barragan. Id. at 105, 126-27.

Officer Ward then visited Carlson's home, and spoke to his wife, Ms. Carlson, as well as to Leif Jr. Ward noted that Leif Jr. had extreme redness on his left cheek and a light, two-inch bruise in the redness. Id. at 132-33, 148. Officer Ward arrested the petitioner. Mr. Carlson, the petitioner, stated that he was simply trying to get his son's attention, and did not intend to hit his son with the back of his hand. Id. at 143-45.

After charges were filed, the prosecution attempted to serve the victim, Leif Jr., with a trial subpoena, but was unsuccessful. Id. at 2-10. The court ultimately heard evidence concerning the unavailability of Leif Jr., which established the following facts, none of which Carlson contests in the present petition.

On July 10, 2009, Carlson accepted a subpoena that was addressed to his son, the victim, Leif Carlson Jr. Id. at 4, 28. Although Carlson and Leif Jr. have the same first and last names, their middle names are different, and the subpoena was addressed to Leif Theodore Carlson, not Leif Thurston Carlson. Id. at 28. The next day, Carlson wrote a letter to the prosecutor stating that he had accepted it by accident and was returning the subpoena to her office. Id. at 214-15.

On July 14, Carlson's wife appeared in court. Prior to that appearance, she told her son Christian Barragan she did not want to show up, but he urged her to attend and

speculated that she might be arrested if she did not. Id. at 70-71. The court ordered Ms. Carlson to produce Leif Jr. for trial, but neither she nor the boy subsequently appeared. Id. at 26. The prosecutor saw Carlson and his wife speaking regularly during the court day on July 14. Id. at 207.

After being ordered to produce her son, Ms. Carlson returned home briefly, and then disappeared for the remainder of the relevant proceedings. She did not stay at home that evening, nor did Leif Jr. Id. at 68. That night, Carlson urged Christian Barragan not to contact her, stating that she was under extreme stress and needed to be left alone. Id. at 69-70.

Christian Barragan did not see Leif Jr. at home between the beginning of trial and July 17, and had not seen or spoken to his mother since the afternoon she was ordered to produce Leif Jr. (July 14) and July 17, which was unusual. Id. at 219, 236-38. Carlson himself came home only briefly on July 14 and 15, and did not sleep at home either night. Id. at 72-74.

On July 17, the trial court found that Carlson had forfeited his right to confront Leif Jr. and his wife, Ex. 2 at 210, and admitted Officer Ward's testimony regarding Leif Jr.'s statements that his father hit him and Ms. Carlson's statements about what Leif Jr. told her about the incident. Id. at 210, 240-41.

## III.    STANDARD OF REVIEW

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id. Moreover, where the Supreme Court precedent is general in nature, courts have more leeway in reaching outcomes. See Harrington v. Richter, 131 S. Ct. 770, 786 (2011). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. —, — (2009).

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000); Avila v. Galaza, 297

4

F.3d 911, 918 n.6 (9th Cir. 2002); Packer v. Hill, 291 F.3d 569, 578-79 (9th Cir. 2002), rev'd on other grounds, 537 U.S. 3 (2002). It also looks to any lower court decision examined and/or adopted by the highest state court to address the merits. See Williams v. Rhoades, 354 F.3d 1101, 1106 (9th Cir. 2004).

Where the state court disposes of a claim on the merits but gives no reasoned explanation, and there is no reasoned lower court decision on the claim, § 2254(d) still applies. See Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011). In such a case, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. at 784. This standard is deliberately high: § 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' rather than a substitute for ordinary correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979).

Where the state court erred under § 2254(d), habeas relief is warranted only if the constitutional error at issue is structural or the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 795-96 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)). A federal court cannot grant the writ based merely on a "reasonable possibility" that the constitutional error contributed to the verdict, but only where the petitioner "can establish that it resulted in actual prejudice." Morales v. Woodford, 388 F.3d 1159, 1171-72 (9th Cir. 2004).

**IV.    CLAIMS AND ANALYSIS**

Carlson asserts two grounds for relief: (1) the trial court admitted testimonial hearsay in violation of his Confrontation Clause rights after incorrectly finding that he forfeited those rights by wrongdoing, and (2) his right to a speedy trial was violated by the nine-month lag between the accusation and trial.

**A.    Confrontation Clause**

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with the witnesses against him." U.S. Const. amend. VI. The federal confrontation right applies to the states through the Fourteenth Amendment.

5

Pointer v. Texas, 380 U.S. 400, 403 (1965). The Confrontation Clause prohibits the admission of all testimonial statements by a witness who did not testify at trial, unless the defendant had an opportunity for cross examination when the statement was made. See Crawford v. Washington, 541 U.S. 36, 50-51 (2004). In Crawford, the Supreme Court recognized that forfeiture by wrongdoing remains a valid exception to the requirements imposed by the Confrontation Clause. Id. at 62.

The Supreme Court initially defined the forfeiture exception in Reynolds v. United States as extinguishing all confrontation claims where the "witness is absent by the [defendant's] own wrongful procurement," on the rationale that "no one shall be permitted to take advantage of his own wrong." 98 U.S. 145, 159 (1878). In Reynolds, the defendant-husband's failure to disclose the location of his witness-wife was held conduct sufficient to trigger a forfeiture of confrontation rights. 98 U.S. at 159-60. More recently, in Giles v. California, the Supreme Court narrowed the scope of the doctrine to situations in which the intent of the defendant is to prevent the victim from appearing as a witness. 554 U.S. 353, 357-58 (2008).[1]

At trial, Carlson argued that Ms. Carlson, of her own accord, chose not to produce the victim, Leif Jr., due to the traumatizing effect it would have on him. Ex. 2 at 65. Carlson's attorney represented that Ms. Carlson stated as much to a different judge in a related proceeding. Id. Moreover, Carlson emphasized that, upon discovering that the subpoena was not intended for him, he immediately returned the subpoena to the prosecutor's office, negating any alleged "gamesmanship." Id. at 6.

The state court nevertheless found that Carlson contrived to "prevent . . . his wife and son from coming forward, being witnesses in this matter, and giving evidence against him." Id. at 211. The court stated that Carlson "created the situation" by keeping his wife's support

---

[1] Though Giles narrowed the rule announced in Reynolds, it also made clear that the new rule would have led to the same result on the facts in Reynolds. See 554 U.S. at 367 (noting that Reynolds invoked broader principles "to admit prior testimony in a case where the defendant had engaged in wrongful conduct designed to prevent a witness's testimony").

6

1 person, Christian Barragan, from contacting her, and thus engaged in "deliberate witness
2 tampering" that triggered forfeiture by wrongdoing.  Id.

3     In the absence of a reasoned opinion, Carlson must still establish that "the was no
4 reasonable basis for the state court to deny relief."  Harrington v. Richter, 131 S. Ct. 770, 784
5 (2011).  He says the state court unreasonably applied Supreme Court precedent because Giles
6 requires proof of his intent to prevent his wife from testifying, and "there are no such
7 statements from Mr. Carlson here."[2]  Traverse at 12.  He says that intent to wrongfully
8 procure the witness's unavailability should not be implied simply because he benefitted from
9 the unavailability, because such a rule would essentially eliminate the intent requirement
10 altogether.  Traverse at 9.

11     Carlson's argument might alternatively be framed as a challenge to the state court's
12 factual finding that he intended to prevent the witness from testifying, which would require
13 that he show the finding was "unreasonable . . in light of the evidence presented."  28 U.S.C.
14 § 2254(d)(2).  The distinction makes no difference here, because the state court's application
15 of Giles and its attendant factual finding were reasonable under the same rationale.

16     The evidence of Carlson's intent was circumstantial and not overwhelming, and
17 different courts may have come to a different conclusion on the same record.  But reasonable
18 bases exist to support the forfeiture conclusion under the Giles standard.  First, the court
19 could reasonably construe Carlson's acceptance of the subpoena directed at his son as
20 conduct designed to interfere with the victim's receipt of it, particularly as the subpoena
21 listed the son's middle name, cutting against Carlson's claim of confusion as to the intended
22 recipient.  Ex. 2 at 28.  Cf. Reynolds, 98 U.S. at 145.

23     Second, Carlson's admonition to his wife's son, Christian Barragan, not to speak to
24 his mother, could reasonably be construed as conduct designed to keep her from testifying
25 and bringing in Leif Jr.  Ex. 2 at 69-70.  Christian originally reported the incident to the

---

[2] Carlson also thinks it significant that the trial court indicated on July 15 and 16 that it was not prepared to find that Carlson caused Leif Jr.'s absence, Ex. 2 at 81-82, 98, 189, yet ultimately came to the opposite conclusion on July 17.  Between the two sets of statements, however, the court heard additional evidence and argument on the matter, and also reviewed the key precedent (Giles) relating to forfeiture by wrongdoing.  Ex. 2 at 202.

7

police, and since then, had acted as Ms. Carlson's primary support person for the trial, encouraging his mother to testify. Id. at 105, 82, 70, 204, 210. By removing Ms. Carlson's source of support and encouragement, Carlson's actions could reasonably be construed as influencing his wife not to testify.

Third, the court could reasonably have interpreted the absence of Ms. Carlson and Leif Jr. from home during trial, along with Carlson's minimal presence at home and his regular communication with Ms. Carlson on July 14, as evidence that Carlson was colluding with his wife in keeping Leif Jr. from testifying. Id. at 100. Cf. Commonwealth v. Edwards, 444 Mass. 526, 537 (2005); see also Commonwealth v. Szerlong, 457 Mass. 858, 862-63 (Edwards still good law after Giles).

Carlson offers innocent explanations and alternative inferences for each of the grounds just recounted, but the question is not whether this or some other court would find his spin on the evidence more persuasive. He has not shown that the forfeiture conclusion was so unsupported as to be an unreasonable application of Giles or an unreasonable determination of fact in light of the evidence presented, foreclosing habeas relief under AEDPA.

Moreover, even if the state court's ruling were unreasonable, this Court cannot grant the writ based merely on a "reasonable possibility" that the constitutional error contributed to the verdict, but only where the petitioner "can establish that it resulted in actual prejudice." Morales v. Woodford, 388 F.3d 1159, 1171-72 (9th Cir. 2004). For Confrontation Clause errors, the focus of the inquiry is on the effect that the lack of opportunity for cross examination had on the verdict. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1984). Carlson argues that there would have been no case against him without Leif Jr.'s hearsay statements to Officer Ward, his mother's hearsay statements, and his half-brother Josh's hearsay statements. Traverse at 13.

The prosecution's case remained strong without the contested statements. Under § 273(a)(b), the prosecution must prove that (1) the petitioner wilfully inflicted unjustifiable physical pain or mental suffering on a child, and (2) that the petitioner did not act while

8

reasonably disciplining a child. Joshua Barragan testified to Carlson's disappointed reaction to Leif Jr.'s performance, as well as to hearing a smacking sound, and to Leif Jr. repeating "why did you punch me?" multiple times. Ex. 2 at 108-09. Leif Jr.'s statements were admissible as excited utterances, which are not testimonial in nature. Crawford v. Washington, 541 U.S. 36, 52 (2004). Officer Ward testified to observing extreme redness on Leif Jr.'s left cheek, and to the fact that the victim was extremely nervous and frightened until Carlson was removed from the home. Ex. 2 at 132-33, 140. Both Joshua and Christian Barragan testified to their observations of the injury on Leif Jr.'s cheek. Id. at 111-14, 234. Carlson himself admitted to Officer Ward shortly after the incident that he lost control and hit his son with the back of his hand, id. at 143-45, and Carlson also testified at trial that he hit him, id. at 337.

On that record, Officer Ward's testimony that Ms. Carlson heard from Leif Jr. that his cheek hurt and that Leif Jr. told Officer Ward that "my daddy got mad and punched me," id. at 240-47, had relatively little independent value for the prosecution. Ultimately, the contested issue was Carlson's intent. Carlson testified, and his counsel argued to the jury, that he inadvertently struck Leif Jr. on the face while intending to "swat his arm" as legitimate discipline for being insubordinate. Id. at 337, 362-68. The jury apparently did not believe him. Even if the admission of Officer Ward's testimony was a violation of Carlson's rights under the Confrontation Clause, it is unlikely that admission of that largely cumulative testimony had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 795-96 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

### B.     Right to a Speedy Trial

Carlson next claims that the state court's determination that his right to a speedy trial was not violated was an objectively unreasonable application of Supreme Court precedent. Although there is no reasoned state court opinion on this issue, in order to succeed on this claim, Carlson must still establish that "the was no reasonable basis for the state court to deny relief." Harrington v. Richter, 131 S. Ct. 770, 784 (2011). In Barker v. Wingo, the

9

1  Supreme Court established a four-pronged test for speedy trial right claims: (1) the length of
2  the delay, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy
3  trial, and (4) the prejudice caused by the delay.  407 U.S. 514, 523 (1972).  The Supreme
4  Court has also held that delay is not presumptively prejudicial until it approaches one year.
5  Doggett v. United States, 505 U.S. 647, 651-52 (1992).
6  　　　In this case, nine months passed from the date of Carlson's arrest to the
7  commencement of the jury trial,  Ex. 3 at 11, precluding Carlson's claim under Doggett.
8  Also, Carlson waived his right to a speedy trial on three separate occasions and failed to
9  appear in court on an earlier trial date, Ex. 1 at 3, 5-6, 23, which cuts against him on the
10 second and third prongs.  Finally, Carlson makes no argument that the delay prejudiced him.
11 Thus, the state court's rejection of his speedy trial claim was not an objectively unreasonable
12 application of clearly established Federal law.[3]

**IT IS SO ORDERED.**

Dated: June 12, 2013

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

---

[3] Federal habeas relief is not available for violations of a petitioner's right to a speedy trial under state law.  Estelle v. McGuire, 502 U.S. 62, 68 (1991).  Although it is possible that Carlson's trial did not occur during the forty-five day window required by California statute, that is insufficient to state a Sixth Amendment speedy trial claim.

United States District Court
For the Northern District of California